LIVONIA DRIVE-IN THEATRE CO. *v.*
CITY OF LIVONIA.

1. MUNICIPAL CORPORATIONS—ADMINISTRATIVE ACTION OF COUNCIL—
   VETO BY MAYOR—APPROVAL OF LICENSE FOR DRIVE-IN THEATER.
   Mayor of home-rule city *held,* to have authority to veto resolu-
   tion of city council approving application for license to operate
   a drive-in theater under city charter declaring that council
   shall act only by ordinance or resolution, that all legislation
   shall be by ordinance, and that "proceedings, except ordi-
   nances, shall take effect on the day succeeding" a meeting
   of the council at which the mayor's veto is overridden, whereas
   ordinances passed over his veto should become effective upon
   publication (City of Livonia Charter, chap 4, §§ 22–24).

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  37 Am Jur, Municipal Corporations § 147.
[2]  37 Am Jur, Municipal Corporations § 107.
[3]  58 Am Jur, Zoning § 113.
[4]  34 Am Jur, Mandamus § 40.
[5]  34 Am Jur, Mandamus § 55.
[6]  34 Am Jur, Mandamus §§ 184, 188.

2. Same—Charters—Control of Administrative Action—Drive-In Theater Applications.

The charter of a home-rule city may, under the Constitution and statutes of the State, prescribe and regulate the authority of the council and also of the mayor with respect to administrative matters, such as the approval of licenses for the operation of a drive-in theater (City of Livonia Charter, chap 4, §§ 22–24).

3. Same—Drive-In Theater—Denial of Application for License —Confiscation of Property.

Administrative denial of application for license to operate a drive-in theater in industrial zone of home-rule city *held*, not to have resulted in a deprivation of the right to make profitable use of its property or confiscation thereof under record showing its value for nonobjectionable industrial use may be as great or greater than use for a drive-in theater.

4. Mandamus—Discretionary Remedy.

The remedy of mandamus is discretionary.

5. Same—Public Officers.

Mandamus will issue against public officials only to compel the enforcement of a clear legal duty.

6. Same—Drive-In Theater—Municipal Officers—Veto of License Application.

Mandamus to compel city clerk to issue building permit and city planning commission to issue license to operate a drive-in theater was properly refused, where pertinent ordinances required approval of such license by city council and its approval had been vetoed by mayor, an action which was not overridden by the council as permitted by charter, there not being established a right to a license or permit (City of Livonia Charter, chap 4, §§ 22–24; Ordinances Nos 193, 194).

Appeal from Wayne; Bowles (George E.), J. Submitted April 7, 1961. (Docket No. 48, Calendar No. 48,936.) Decided June 29, 1961.

Mandamus by Livonia Drive-In Theatre Co., a Michigan corporation, against the City of Livonia, a home-rule city, its mayor, various of its officials, all members of its planning commission, and Marie W. Clark, city clerk, to compel issuance of license

and building permit for drive-in theater. Writ denied. Plaintiff appeals. Affirmed.

*Harold N. Harris* and *Samuel Shapero,* for plaintiff.

*Rodney Kropf,* City Attorney, *Charles J. Pinto* and *Charles A. Forrest, Jr.,* Assistant City Attorneys, for defendant city and others.

*William S. Munger,* for defendant city clerk.

CARR, J. This case involves the alleged right of plaintiff to a license to operate a drive-in theater in defendant city, and to a building permit therefor. Following its incorporation defendant city adopted an ordinance prohibiting the establishment of drive-in theaters within the municipality. In *Bzovi* v. *City of Livonia,* 350 Mich 489, it was held that such prohibitory clause of the ordinance was invalid on the ground that its purpose was to prevent the carrying on of legitimate business enterprises. Thereafter the city through its legislative authority adopted certain ordinance amendments permitting the use of lands within the city, zoned as industrial, for drive-in theater purposes, the establishing thereof being subject to certain prescribed conditions. Among other provisions was a requirement that the approval of the city planning commission should be obtained, but such provision was subject to the right of the city council to approve an application for the issuance of a drive-in theater license notwithstanding disapproval thereof by said commission. The controlling ordinance (No 193) also contemplated favorable action by the city department of health and the Livonia police and fire departments. As a matter of procedure in the instant case the city council, in its consideration of plaintiff's application for

a license, also requested approvals from the city traffic commission, the department of public works, the building department, and the Michigan State highway department. Such approvals were given.

Being unsuccessful in its attempts to procure permission to operate the drive-in theater and a necessary building permit, the plaintiff filed its petition in the circuit court of Wayne county asking for a writ of mandamus to compel the defendant city clerk to issue the license authorizing operation of the drive-in theater and to compel defendant planning commission to issue the building permit. It was alleged in said petition that prior to the incorporation of plaintiff in November, 1958, application had been made by Raymond Schreiber, now plaintiff's president, for a drive-in theater license for operation on certain land, approximately 30 acres in extent, on the north side of Plymouth road, between Levan and Newburgh roads, which under the city ordinance was zoned for "light industrial, M–1" uses, expressly including drive-in theaters. Plaintiff alleged that the land referred to was purchased at an agreed price of $180,000 of which amount the sum of $50,400 had been paid at the time of the bringing of the action.

Plaintiff further alleged the expenditure of large sums of money in connection with the preparation of plans and specifications for the construction of the theater. Thereafter application was made for a building permit and for approval by the common council of the city of an application for a drive-in theater license. The common council approved the issuance of such license to Raymond Schreiber, but the mayor of the city vetoed the resolution of approval. The council failed to overrule such veto, 5 votes for such purpose being required.

Following the above mentioned events, as alleged in plaintiff's petition and established by exhibits in-

troduced in the case, Mr. Schreiber assigned to the plaintiff corporation whatever right, title, and interest might be vested in him by virtue of the proceedings to obtain the requisite license and permit. It appears, however, that plaintiff did not rely on the approval by the common council but, apparently for the purpose of avoiding any legal question with reference to such assignment, made a new application for a drive-in theater license on June 4, 1959, paying at the time the sum of $1,200 as a license fee. In such application reliance was had on approvals of municipal authorities obtained by Mr. Schreiber. Following the new application to the city council plaintiff sought the approval of the defendant planning commission, which was refused on the alleged grounds that in its proposed location the land use in question would be injurious to the surrounding neighborhood.

Under date of September 14, 1959, the city council considered the application of plaintiff previously filed on June 4th of said year, and gave approval thereto, authorizing the city clerk to issue the license. The mayor interposed a veto to the resolution and filed with the city council a message setting forth the reasons for his action. Again the council failed to overrule the veto. Thereafter the city clerk declined to issue the license, and plaintiff's application for a building permit was also denied.

On the hearing of the petition for writ of mandamus the matters in controversy were submitted on a stipulation of facts, the greater part of the stipulation being expressly based on exhibits incorporated therein by reference or by being set forth in full, which exhibits are in accord with the averments in plaintiff's petition for the writ insofar as the procedure observed was concerned. Following consideration of the stipulated facts and the arguments of counsel with reference to the legal issues raised,

the trial judge concluded, as indicated in the opinion filed by him, that plaintiff was not entitled to the relief sought. An order was entered accordingly and, on leave granted by this Court, plaintiff has appealed.

It is the claim of appellant, among other arguments advanced in support of the appeal, that under the charter of the city the mayor had no authority to veto the resolution approving plaintiff's application. It is argued in substance that the power to exercise the veto is limited by the charter to legislative matters, that the granting of a license for the drive-in theater was purely administrative, and that, in consequence, the action of the council in approving the application was final. Such claim was disputed in the trial court on behalf of defendants, and the trial judge, citing and quoting from pertinent provisions of the charter, rejected the argument advanced by counsel for plaintiff, and concluded that the mayor had the authority to veto the resolution. We are in accord with such conclusion.

Chapter 4, § 22, of the city charter declares that the council shall act only by ordinance or resolution, the latter term being limited to official action in the form of a motion pertaining to the internal affairs of the city government, or specifically provided for by charter or statute. The following section relates to the enactment of ordinances, it being specified that all legislation of the city must be in such form. It thus appears from the provisions of said sections that action on administrative matters was intended to be taken by resolution and in legislative matters by ordinance. The veto power of the mayor is expressly covered in section 24 of said chapter, which reads as follows:

"The mayor shall have the power to veto, except as otherwise in this charter provided, which veto, with

his reasons therefor in writing, must be made and filed with the city clerk prior to the time of the next regular meeting of the council, at which said meeting the clerk shall present such veto or vetoes to the council. The council may, only at said meeting or at any adjournment thereof, reconsider the vote by which such proceedings were passed and adopted; and if it so elects, may, only at said meeting or at any adjournment thereof, re-adopt such proceedings by an affirmative vote of 5 of· the members elect, in which event the mayor shall have no further right to veto, and in which event, all such proceedings, except ordinances, shall take effect on the day succeeding said meeting of the council; and ordinances so passed shall become effective when published according to law. All resolutions and proceedings, not vetoed by the mayor in the manner and within the time hereinabove specified, shall become effective on the day succeeding the date of the next regular meeting of the council; and ordinances not so vetoed by the mayor shall become effective when published and recorded according to law."

It will be noted that the quoted section refers to "proceedings" of the council. The intent is clearly indicated that the veto power extends to both resolutions and ordinances. The provision with reference to the taking effect of the council action in the event of the overruling of the mayor's veto is significant. All proceedings, *except ordinances,* were to be effective on the day following the action of the council. Clearly the reference to "all such proceedings" includes action taken by resolution, the authority of the council to act being limited to one or the other of such forms of expression. The language used is wholly inconsistent with the claim that the veto power granted to the mayor by the charter does not extend to resolutions pertaining to administrative matters.

On the issue as to the mayor's authority the charter is conclusive. In the framing and adoption of said instrument the electors of the city had the right under the Constitution and statutes of the State to prescribe and regulate the authority of the council and also of the mayor with respect to administrative matters of the character in question here. Counsel for appellant have called attention to *Fish* v. *City of Dearborn,* 351 Mich 169. However, the provisions of the charter of Dearborn, there considered in the opinion of the Court, did not contain the express language controlling in the interpretation of the provisions of the Livonia charter above considered.

The further argument is advanced by plaintiff that the reasons given by the mayor for his veto of the resolutions adopted by the city council were insufficient to support his action. It will be noted that chapter 4, § 24, of the charter, above quoted, imposes no requirement with reference to the sufficiency of reasons impelling a veto of either a resolution or an ordinance. The provision that the mayor shall state his reasons for his action was presumably based on the theory that the members of the council, being vested with authority to overrule a veto, were entitled to know the mayor's objections to the end that proper consideration might be given thereto. The weighing of such objections in the instant case rested solely with the council.

As a result of the exercise of the veto power by the mayor, and the failure of the common council to override such action, there was no valid resolution of approval of the application of the plaintiff, or of its assignor, for a license to operate a drive-in theater on the property involved. The conclusion necessarily follows that the defendant city clerk was not authorized to issue such a license by the terms of the city ordinance providing therefor. The peti-

tion filed by plaintiff in circuit court did not challenge the validity of the provisions of either ordinance 193 or 194, here involved, except as to a clause requiring that a drive-in theater shall not be permitted to operate between December 1st and April 1st of any license year. Such provision is obviously not involved in the instant controversy. The substance of plaintiff's claim is that it is entitled to a license to operate, and a building permit, under the city ordinances cited.

Neither the averments of the petition nor the stipulation of facts on which the case was heard in the trial court suggest any possible claim that plaintiff is being deprived of the right to make profitable use of its property. In other words, there is nothing before us tending to establish the confiscation of the property in question because of plaintiff's inability to obtain the requested license and permit. Said property is in an industrial zone, and so far as this record discloses its value for nonobjectionable industrial use may be as great or even greater than for the use thereof for a drive-in theater.

As the situation now stands, plaintiff is not entitled to the remedy sought against the clerk or the planning commission. The remedy of mandamus is discretionary and such a writ will issue against public officials only to compel the enforcement of a clear legal duty. No relief is here sought against the city council. Neither it nor its members are parties to the case. Plaintiff cannot operate a drive-in theater in the absence of approval by the council of an application for a license therefor. At the present time there is no valid approval because of exercise of the mayor's veto and the failure to overrule it as authorized by the charter. The conclusion follows that plaintiff has failed to establish its claimed right to a license to operate a drive-in theater, and the requi-

site building permit, under the provisions of the municipal ordinances involved.

On the record before him the trial judge correctly disposed of the matters at issue under the pleadings. and the proofs. The order from which the appeal has been taken is affirmed.

DETHMERS, C. J., and KELLY, SMITH, BLACK, ED-WARDS, KAVANAGH, and SOURIS, JJ., concurred.