[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Dunn v. Plain Local School Dist. Bd. of Edn.,* Slip Opinion No. 2020-Ohio-339.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-339

THE STATE EX REL. DUNN ET AL. *v.* PLAIN LOCAL SCHOOL DISTRICT BOARD OF EDUCATION ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Dunn v. Plain Local School Dist. Bd. of Edn.,* Slip Opinion No. 2020-Ohio-339.]

*Mandamus—Elections—Writ of mandamus sought to compel placement of R.C. 3311.242 proposal on March 2020 primary-election ballot—Board of elections ordered to review and examine petition under R.C. 3501.11(K)(1) and perform any duties required by law for potential placement of the petition on the March 2020 ballot—Limited writ granted.*

(No. 2020-0094—Submitted January 29, 2020—Decided February 3, 2020.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} This is the third case involving a petition to transfer the territory of the village of Hills and Dales from Plain Local School District to Jackson Local

School District. We dismissed the first case, which was brought by the village itself, for lack of standing. *State ex rel. Hills & Dales v. Plain Local School Dist. Bd. of Edn.*, __ Ohio St.3d __, 2019-Ohio-5160, __ N.E.3d __, ¶ 1. In the second case, we granted a writ of mandamus ordering respondent Plain Local School District Board of Education to forward the petition to respondent Stark County Board of Elections to check the sufficiency of the signatures on the petition. *State ex rel. Dunn v. Plain Local School Dist. Bd. of Edn.*, __ Ohio St.3d __, 2020-Ohio-40, __ N.E.3d __, ¶ 19.

{¶ 2} The elections board has verified that the petition contains a sufficient number of valid signatures. Relators, ten Hills and Dales residents,[1] now seek another writ of mandamus to compel the placement of the transfer proposal on the March 17, 2020 primary-election ballot. We grant a limited writ compelling the elections board to review the petition for placement on the March 17 ballot.

**Background**

{¶ 3} As discussed in our two earlier opinions, R.C. 3311.242 establishes a multistep process for the placement of a school-district-territory transfer proposal on an election ballot. *See Dunn* at ¶ 2; *Hills & Dales* at ¶ 3. The first step in that process in this case occurred on October 29, 2019, when the school board received a petition proposing the transfer of the village's territory from Plain Local School District to Jackson Local School District beginning in the 2020-2021 school year. The petition sought to have the proposal placed on the March 17 ballot.

{¶ 4} Although the school board considered the petition at its next regularly scheduled meeting on November 20, 2019, it did not forward the petition to the elections board as it was required to do under R.C. 3311.242(C). The school board instead stated that it would not act on the petition while a lawsuit it had filed

---

1. Relators are Patrick M. Dunn, Michele M. Dunn, Eric J. Reckenbeil, Kimberly L. Reckenbeil, Paul Bishop, Jane Bishop, Caryn L. Peterson, Andria Sinclair, Theodore Savastano, and Carole Savastano.

challenging the constitutionality of R.C. 3311.242 remained pending in federal court. In *Dunn*, we ordered the school board to comply with R.C. 3311.242(C). *Dunn* at ¶ 19.

{¶ 5} On January 9, 2020, the school board forwarded the transfer petition to the elections board to check the sufficiency of the signatures. On January 13—two business days later—the elections board confirmed that the petition contained a sufficient number of valid signatures. On January 16, in accordance with R.C. 3311.242(B)(2), the school board certified the proposal to the elections board, indicating in its certification that the proposal should be placed on the November 3, 2020 general-election ballot.

{¶ 6} On January 17, relators filed this mandamus action seeking to compel the school board to (1) certify the proposal to the elections board indicating that the proposal should be placed on the March 17 primary-election ballot and (2) file with the State Board of Education the proposal and a map showing the territory that would be transferred. Relators also seek an order compelling the elections board to place the proposal on the March 17 ballot.

### Laches analysis

{¶ 7} The elections board argues that the claims stated against it are barred under the doctrine of laches. "The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 145, 656 N.E.2d 1277 (1995).

{¶ 8} The elections board argues that relators unreasonably delayed between October 29, when the petition was filed with the school board, and December 16, when relators filed their first mandamus action. But this alleged delay cannot sustain the first element of laches in this case, because the laches

standard focuses on delay in the assertion of a right, not on whether a relator contributed to a delay in a cause of action becoming ripe. *See Polo* at 145.

{¶ 9} Relators' claim against the elections board—to have the transfer proposal placed on the March 17 ballot—did not arise until the elections board verified the petition signatures and the school board certified the proposal back to the elections board. *See* R.C. 3311.242(B) and (C). Given that the latter event occurred on January 16—one day before relators filed their complaint in this case—relators did not unreasonably delay in asserting their rights.

### Mandamus analysis

{¶ 10} To be entitled to a writ of mandamus, relators must prove, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of respondents to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6. Given the nearness of the March 17 election, relators lack an adequate remedy in the ordinary course of the law. *See State ex rel. Ohio Liberty Council v. Brunner*, 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410, ¶ 27.

*The school board has no remaining duties under R.C. 3311.242(B)*

{¶ 11} Once the elections board certified the sufficiency of the petition signatures to the school board, R.C. 3311.242(B)(2) required the school board to

> [c]ertify the proposal to the board of elections * * * for the purposes of having the proposal placed on the ballot at the next general or primary election which occurs not less than ninety days after the date of the certification or at a special election, the date of which shall be specified in the certification, which date shall not be less than ninety days after the date of the certification.

{¶ 12} There is no dispute that the school board certified the transfer proposal to the elections board on January 16. But relators argue that the school board failed to comply with R.C. 3311.242(B)(2) because the certification indicated that the proposal should be placed on the November 3 ballot. Relators ask us to order the school board to, in effect, *recertify* the proposal to the elections board, this time indicating that it should be placed on the March 17 ballot.

{¶ 13} Relators wrongly assume that the reference to the November 3 election in the January 16 certification is meaningful and binding. R.C. 3311.242(B)(2) requires a school board to specify the date of the election in its certification only if the proposal is to be placed on the ballot at a special election. Because neither relators nor the school board seek to have the proposal placed on a special-election ballot, the election date identified in the January 16 certification is superfluous.

{¶ 14} Given that the school board already has certified the proposal to the elections board under R.C. 3311.242(B)(2) and has no clear legal duty, under these circumstances, to specify the date of the election at which the proposal should be voted on, relators are not entitled to an order compelling the school board to recertify the proposal to the elections board. Moreover, because the school board was not required to specify the election date in its certification, its reference to the November 3 election was inconsequential and has no binding effect.

{¶ 15} Relators also request a writ of mandamus compelling the school board to file the proposal and a map showing the boundaries of the territory to be transferred with the State Board of Education, as required under R.C. 3311.242(B)(1). The school board has a clear legal duty to take that action, and relators have a clear legal right to the school board's compliance. But in its brief, the school board represents that it complied with R.C. 3311.242(B)(1) on January 16. Therefore, it is unnecessary for us to grant a writ of mandamus as to the school board in this case.

5

*Relators' claim against the elections board is ripe*

**{¶ 16}** Because the school board has certified the proposal under R.C. 3311.242(B)(2), the elections board now has a duty to determine whether the proposal can be placed on an election ballot. *See* R.C. 3311.242(B)(2) and (D). As the elections board points out, however, it would be premature for us simply to order the board to place the proposal on the March 17 ballot—or any other ballot for that matter. Before the proposal can be placed on a ballot, the elections board must "[r]eview, examine, and certify the sufficiency and validity" of the petition, R.C. 3501.11(K)(1), approve ballot language, R.C. 3501.11(V), and (if necessary) hear and determine any written protests that are filed concerning the petition, R.C. 3501.39(A).

**{¶ 17}** The elections board argues that its remaining obligations concerning the petition prevent relators' mandamus claim from being ripe. It relies on our statement in *Dunn* that a claim is not ripe if it is "contingent on a decision that has not yet been made." __ Ohio St.3d __, 2020-Ohio-40, __ N.E.3d __, at ¶ 18. But this case is unlike *Dunn* because the elections board's duty to proceed concerning the petition is not contingent on another party's future decision. The board itself now must proceed concerning the petition—the only question being whether the proposal remains eligible for the March 17 ballot. Relators' mandamus claim against the board—which raises that question—therefore presents a ripe controversy.

*The elections board must review the petition for placement on the March 17 ballot*

**{¶ 18}** Relators argue that the elections board should proceed to place the proposal on the March 17 ballot because the petition itself requests placement on that ballot. Respondents, however, point to R.C. 3311.242(B)(2), which requires a transfer proposal to be placed on the ballot "at the next general or primary election which occurs not less than ninety days after *the date of the certification*." (Emphasis added.) Respondents contend that the proposal cannot be placed on the

March 17 ballot, regardless of what the petition says, because the date of the school board's certification—January 16—was well past the December 18, 2019 deadline established under R.C. 3311.242(B)(2).

{¶ 19} Respondents argue that the transfer proposal is not eligible for placement on the March 17 ballot because R.C. 3311.242(B)(2) establishes a clear deadline and election laws generally require strict compliance. *See State ex rel. Ditmars v. McSweeney*, 94 Ohio St.3d 472, 476, 764 N.E.2d 971 (2002). But respondents fail to appreciate how the school board's outright refusal to comply with its clear duty under R.C. 3311.242(C)—which persisted for at least seven weeks—directly prevented the proposal from being certified to the elections board by December 18. In past cases, we have taken similar recalcitrance into account, recognizing that ballot-deadline provisions must not be considered in isolation but applied in the light of the case's underlying facts.

{¶ 20} For example, in *State ex rel. Citizens for a Better Portsmouth v. Sydnor*, 61 Ohio St.3d 49, 51-52, 572 N.E.2d 649 (1991), due to a city council's unauthorized delay in adopting an ordinance, a proposed charter amendment was not submitted by the deadline for placement on the ballot at the next regular election. We nevertheless granted a writ of mandamus to compel submission of the issue for consideration at the next general election because the city council "had the opportunity" to enact an ordinance in time for the issue to be placed on the general-election ballot but "declined to do so for reasons outside the scope of [its] authority." *Id*. at 54. We provided similar relief based on similar facts in *Morris v. Macedonia City Council*, 71 Ohio St.3d 52, 57-58, 641 N.E.2d 1075 (1994). And in *State ex rel. Commt. for the Charter Amendment, City Trash Collection v. Westlake*, 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, ¶ 42, we held that if a city council "has the opportunity" to take the action necessary to place an issue on an election ballot "but refuses to do so for unlawful reasons, a writ of mandamus

will issue to compel its submission to the electors on that ballot instead of at a later special election."

{¶ 21} The school board argues that these cases have no application here because they involved provisions that—unlike R.C. 3311.242(B)(2)—required the proposed measures to be voted on at an election occurring within 120 days of the city council's passage of an ordinance. In other words, the school board suggests that we have allowed a measure to be placed on an election ballot after the relevant deadline has passed only to avoid the costs of a special election. But the caselaw does not support such a narrow rule. As we explained in *Morris*, our holding was necessary to prevent a party opposed to a ballot measure—such as the school board in this case—from being able to frustrate an electoral process through unauthorized delay. *See Morris* at 57.

{¶ 22} Considering that it took the elections board only two business days to verify the sufficiency of the signatures on the petition, it is clear that it was the school board's refusal to comply with R.C. 3311.242(C) that caused the transfer proposal to be certified to the elections board after the December 18 deadline. Because the school board had the opportunity to take the action necessary for the proposal to be placed on the March 17 ballot but declined to do so for reasons outside the scope of its authority, the proposal still may appear on the March 17 ballot.

{¶ 23} But as discussed above, it would be premature for us to order the elections board to place the proposal on the March 17 ballot at this time, because the board still must proceed as it would with any other issue presented to it for placement on a ballot. Therefore, we grant a limited writ ordering the elections board to review and examine the petition under R.C. 3501.11(K)(1) and to perform any other duties required by law for the potential placement of the petition on the March 17 ballot.

8

*Relators are not entitled to an award of attorney fees and costs*

{¶ 24} Relators seek an award of the attorney fees and costs they have incurred in pursuing this action. Such an award may be appropriate "when the prevailing party demonstrates bad faith on the part of the unsuccessful litigant." *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7.

{¶ 25} In support of their request, relators focus on the school board's refusal to forward the petition to the elections board from October 29, 2019, to January 9, 2020. Although we ultimately held in *Dunn* that R.C. 3311.242(C) required the school board to forward the petition to the elections board, relators have not presented evidence of bad faith on the school board's part. More importantly, relators fail to appreciate that the school board's noncompliance with R.C. 3311.242(C) is not at issue in this case. At issue here is the school board's duty to certify the proposal under R.C. 3311.242(B). Because the school board acted promptly under R.C. 3311.242(B), relators are not entitled to an award of attorney fees and costs.

**Conclusion**

{¶ 26} We grant a limited writ of mandamus ordering the Stark County Board of Elections to review and examine the petition under R.C. 3501.11(K)(1) and to perform any other duties required by law for the potential placement of the petition on the March 17, 2020 ballot. If the board determines that the petition otherwise meets the requirements established by law, then it shall place the petition on the March 17 ballot notwithstanding the 90-day requirement set forth in R.C. 3311.242(B)(2).

Writ granted.

O'CONNOR, C.J., and FISCHER, DEWINE, and DONNELLY, JJ., concur.

FRENCH, J., concurs in part and dissents in part and would deny the writ.

STEWART, J., concurs in part and dissents in part, with an opinion.

KENNEDY, J., dissents, with an opinion.

————————————

**STEWART, J., concurring in part and dissenting in part.**

{¶ 27} I concur in the court's judgment to the extent that it orders a limited writ for respondent Stark County Board of Elections to immediately proceed with its duties for potential placement of the proposal on the March ballot. But it is premature to order placement on the March ballot at this time, before all required actions by the board of elections are taken and before any potentially required actions can be known. I believe that doing so does not take into account any unreasonable hardship on the board of elections or potential disenfranchisement of eligible voters. At a minimum, along with this court's order to the board of elections to place the proposal on the March ballot—because we do not know how much time will be necessary for the board to complete its required actions—this court should issue an order in the alternative for the board of elections to show cause why the proposal cannot be placed on the March ballot. I therefore concur in part and dissent in part.

————————————

**KENNEDY, J., dissenting.**

{¶ 28} I dissent from the court's decision to order a limited writ in this case. I would simply grant the writ and order respondent Stark County Board of Elections to perform all duties necessary to place the petition on the March 17, 2020 ballot.

{¶ 29} R.C. 3311.242 gives a community the right to transfer its territory from one school district to another school district in the same township. Here, relators, ten residents of the village of Hills and Dales, *see* majority opinion at ¶ 2, fn. 1, desire to put before the voters the question whether Hills and Dales should transfer its territory from the Plain Local School District to the Jackson Local School District. The Plain Local Board of Education has done everything within its power—and, as the court determines today, things outside its power—to thwart

the ability of the citizens of Hills and Dales to decide where their children should be educated. Relators did everything R.C. 3311.242 requires them to do to get their proposal on the March 17, 2020 ballot; therefore, their proposal should be placed on that ballot. In other cases involving purposeful, obstructive foot-dragging by governmental bodies that resulted in a measure not being submitted before a statutory deadline for placement on a ballot, we have simply ordered that which was necessary for the measure to be placed on the ballot. *See, e.g., State ex rel. Harris v. Rubino*, 155 Ohio St.3d 123, 2018-Ohio-3609, 119 N.E.3d 1238, ¶ 29; *State ex rel. Commt. for Charter Amendment Petition v. Maple Hts.*, 140 Ohio St.3d 334, 2014-Ohio-4097, 18 N.E.3d 426, ¶ 28; *State ex rel. N. Main St. Coalition v. Webb*, 106 Ohio St.3d 437, 2005-Ohio-5009, 835 N.E.2d 1222, ¶ 47; *State ex rel. Commt. for the Charter Amendment, City Trash Collection v. Westlake*, 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, ¶ 45; *Morris v. Macedonia City Council*, 71 Ohio St.3d 52, 58, 641 N.E.2d 1075 (1994); *State ex rel. Concerned Citizens for More Professional Govt. v. Zanesville City Council*, 70 Ohio St.3d 455, 460, 639 N.E.2d 421 (1994); *State ex rel. Citizens for a Better Portsmouth v. Sydnor*, 61 Ohio St.3d 49, 54, 572 N.E.2d 649 (1991); *State ex rel. Jurcisin v. Cotner*, 10 Ohio St.3d 171, 173, 462 N.E.2d 381 (1984). We should do the same here.

{¶ 30} I fear that the limited nature of the writ leaves the door open to further actions designed to hinder the placement of the petition on the March 17, 2020 ballot. I acknowledge that—through no fault of its own—the Stark County Board of Elections has been thrust into a time crunch. But delaying a vote of the people beyond the March 17, 2020 election would reward the Plain Local Board of Education's obstruction of the electoral process. This court should ensure that these relators' rights are held inviolate and not impeded or diminished by government. Therefore, I would grant the writ and order the board of elections to perform all duties necessary to place relators' proposal on the March 17, 2020 ballot.

_____

Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., Scott M. Zurakowski, Owen J. Rarric, Joseph J. Pasquarella, and Amanda M. Connelly, for relators.

Ulmer & Berne, L.L.P., Amanda Martinsek, William D. Edwards, Daniela Paez, Trevor J. Hardy, Gregory C. Djordjevic, Rex A. Littrell, and Rachael Rodman, for respondent Plain Local School District Board of Education.

John D. Ferrero, Stark County Prosecuting Attorney, and Stephan P. Babik, Deborah A. Dawson, and Jessica L. Logothetides, Assistant Prosecuting Attorneys, for respondent Stark County Board of Elections.

_____